UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UNITED STATES OF AMERICA | ) |
| | ) |
| v. | ) |
| | ) Crim. No. 18-10250-DJC |
| BRANDON JAMES ZIOBROWSKI, | ) |
| | ) |
| Defendant. | ) |
| | ) |

**Opposition to Defendant's Motion to Dismiss (Dkt. 43)**

Ziobrowski's motion to dismiss should be denied because the indictment against him properly alleges that he made a true threat, a type of speech not protected by the First Amendment. Whether that allegation is sustained by the evidence is a fact-dependent, context-specific matter to be decided by the jury, not by the Court. The Court should therefore deny Ziobrowski's motion and permit the case to proceed to trial.

**The Allegations in the Indictment**

The indictment against Ziobrowski contains just one count, which alleges that Ziobrowski violated 18 U.S.C. § 875(c) by knowingly transmitting in interstate and foreign commerce a communication that contained a threat to injure another person, and that he did so "intending that his message communicate a threat and knowing that it would be interpreted as a threat." Indictment (Dkt. 3) ¶ 12. The charge stems from a message Ziobrowski posted on Twitter on July 2, 2018, in which he stated:

> I am broke but I will scrounge and literally give $500 to anyone who kills an ice agent. @me seriously who else can pledge get in on this let's make this work

*Id.* ¶ 6. The indictment further alleges that this tweet was "designed to encourage violence and the murder of law enforcement agents." *Id.* ¶ 8.

In addition to the allegations concerning Ziobrowski's conduct and his intent, the indictment also contains allegations about his knowledge and the environment in which Ziobrowski posted the July 2 tweet. Specifically, the indictment alleges that, "[w]hen ZIOBROWSKI posted his July 2, 2018 tweet, he knew that [ ] people like himself were calling for ICE agents to be killed on social media platforms." *Id.* The indictment describes how Ziobrowski's posts and messages became more violent and anti-law enforcement in the months leading up to July 2, *id.* ¶¶ 3–5, and describes the response to the July 2 tweet of the Department of Homeland Security, which, "[b]ased upon the seriousness and specificity of the threat," issued a nationwide alert to federal, state, and local law enforcement agencies, including ICE field offices, *id.* ¶ 9. Finally, the indictment also recounts how Twitter suspended Ziobrowski's Twitter account after the FBI's Joint Terrorism Task Force requested that Twitter remove the July 2 tweet "because it posed a threat to the public safety of ICE agents around the country." *Id.* ¶ 10.

### The Motion to Dismiss

Ziobrowski's motion seeks dismissal of the indictment because, in Ziobrowski's view, his tweet was protected by the First Amendment. His only substantive argument is that his July 2 tweet does not fall into any of three content-based exceptions to the First Amendment's free speech protections: true threats, fighting words, and obscenity. *See* Mot. at 20–29. Of these, the Court need consider only one: the argument that Ziobrowski's tweet was simply political hyperbole and, as a result, not a true threat. *See id.* at 21–25. Because Ziobrowski's tweet did in fact constitute a true threat—and because a trial is necessary to prove it—Ziobrowski's motion to dismiss should be denied.

In addition to his arguments concerning the scope of the three exceptions to the First Amendment's protections, Ziobrowski also asserts—but does not truly argue—that § 875(c) is unconstitutional, both facially and as applied to his July 2 tweet. Ziobrowski asserts that § 875(c) "is facially defective" because it has the capacity to criminalize political speech, *see, e.g.*, Mot. at 1, 16, and he also contends that the statute is only unconstitutional as applied to his tweet— that is, that § 875(c) criminalizes his July 2 tweet, but the First Amendment gives him the right to make it. *See, e.g.*, *id.* at 1–2, 14. As explained below, however, both these assertions should be deemed waived for lack of argument, and both are incorrect, in any event.

## The Applicable Legal Framework

When, as here, a motion to dismiss is predicated on a First Amendment argument that the communication at issue did not constitute a true threat (and therefore was protected by the First Amendment), the Court must deny the motion to dismiss unless it finds that no reasonable jury could conclude that the statement at issue was a true threat.[1] *See, e.g.*, *United States v. Stevens*, 881 F.3d 1249, 1252 (10th Cir. 2018) ("If a court determines that a reasonable jury could find

---

[1] Ziobrowski does not contend that the indictment against him fails to enumerate § 875(c)'s required elements or to adequately inform him of the charge against him. Nor could he, as the indictment alleges all of the essential elements of a § 875(c) offense. The government therefore has not included in its opposition an explanation of how the indictment meets the requirements set by the legal standard generally applicable in motion-to-dismiss cases. That standard principally calls upon the Court to evaluate whether the indictment contains the elements of the offense and informs the defendant of the charges against him. *See, e.g.*, *United States v. Cianci*, 378 F.3d 71, 81 (1st Cir. 2004) ("[A]n indictment is sufficient if it, first, contains the elements of the offense charged and fairly informs a defendant of the charge against which he must defend, and, second, enables him to plead an acquittal or conviction in bar of future prosecutions for the same offense."). The standard derives, in part, from the Sixth Amendment to the Constitution, which grants criminal defendants the right "to be informed of the nature and cause of the accusation" against them, U.S. Const. Amend. VI, and in part from Rule 7(c) of the Federal Rules of Criminal Procedure, which requires that an indictment "be a plain, concise, and definite written statement of the essential facts constituting the offense charged," Fed. R. Crim. P. 7(c)(1). "The test for sufficiency, therefore, is not whether, in hindsight, the indictment or information could have been more complete, but rather whether it fairly identifies and describes the offense." *United States v. Allard*, 864 F.2d 248, 250 (1st Cir. 1989) (citation omitted).

that the communications constitute true threats, then it may deny the defendant's motion to dismiss" (internal quotation marks and alterations omitted)); *United States v. Stock*, 728 F.3d 287, 298 (3d Cir. 2013) ("[W]e reaffirm that a court may properly dismiss an indictment as a matter of law if it concludes that no reasonable jury could find that the alleged communication constitutes a threat or a true threat."); *see also United States v. Clemens*, 738 F.3d 1, 12–13 (1st Cir. 2013) (implicitly adopting the standard that a motion to dismiss may not be granted unless no reasonable jury could conclude that the charged statements were true threats). To make that determination, the Court must treat the allegations in the indictment as true, *see, e.g.*, *United States v. Guerrier*, 669 F.3d 1, 3–4 (1st Cir. 2011), and it may not rely on factual assertions introduced by the defendant in his motion to dismiss. "There is no summary judgment procedure in criminal cases," *United States v. O'Brien*, 994 F. Supp. 2d 167, 173 (D. Mass. 2014) (Saylor, J.), and under the Federal Rules of Criminal procedure, in a pretrial motion, a defendant may only raise a "defense, objection, or request that the court can determine *without a trial on the merits*." Fed. R. Crim. P. 12(b)(1) (emphasis added). Consequently, "Rule 12 permits pretrial resolution of a motion to dismiss the indictment only when 'trial of the facts surrounding the commission of the alleged offense would be of no assistance in determining the validity of the defense.'" *United States v. Pope*, 613 F.3d 1255, 1259 (10th Cir. 2010) (quoting *United States v. Covington*, 395 U.S. 57, 60 (1969)). As argued below—and as is apparent from the highly fact-dependent manner in which Ziobrowski argues his motion—that condition is not met here. The facts that will be presented at trial will be very important to establishing that Ziobrowski's tweet constituted a true threat, not protected political expression or hyperbole.

Although some of the evidence that the government anticipates introducing at trial is described in this filing, whether the government will successfully prove the indictment's

allegations at trial is not the standard by which a motion to dismiss should be judged. A motion to dismiss "that targets the strength of the government's *evidence* misfires," which is why "courts routinely rebuff efforts to use a motion to dismiss as a way to test the sufficiency of the evidence behind an indictment's allegations." *Guerrier*, 669 F.3d at 3–4; *see also United States v. Stewart*, 744 F.3d 17, 21 (1st Cir. 2014) ("At the indictment stage, the government need not 'show,' but merely must allege, the required elements [of a crime]."); *United States v. Savarese*, 686 F.3d 1, 7 (1st Cir. 2012) (observing that, when a defendant seeks dismissal of all or part of an indictment, "the question is not whether the government has presented enough evidence to support the charge . . . ").

## Argument

The sole question argued in Ziobrowski's motion to dismiss is whether his tweet fell outside the protections of the First Amendment, and that is a question for the jury, not the Court. In all but the most unusual of threats cases, whether a communication constitutes a true threat is a fact-dependent inquiry inappropriate for decision at the motion-to-dismiss stage. This case is no different. As if to illustrate that point, Ziobrowski devotes over a third of his motion to factual assertions. *See* Mot. at 2–12, 17–20. He does this because the context in which Ziobrowski made his tweet is so important to determining whether it constituted a threat, as the government has alleged, or "a vitriolic and sarcastic" manifestation of political speech, as Ziobrowski contends. Mot. at 21. Yet despite the quantity of facts Ziobrowski included in his motion, there are many relevant facts Ziobrowski omitted, together with competing interpretations of the facts that Ziobrowski has chosen to describe for the Court. Both of these are reasons why a trial is necessary and Ziobrowski's motion to dismiss should be denied.

I.      Whether Ziobrowski's July 2 Tweet Constituted a True Threat Must be Decided by a Jury

The core contention in Ziobrowski's motion is that his July 2 tweet was political commentary, not a threat. But as the First Circuit has long maintained: "Whether a given [statement] constitutes a threat is an issue of fact for the trial jury." *United States v. Fulmer*, 108 F.3d 1486, 1491 (1st Cir. 1997) (alteration in original). Ziobrowski's motion should be denied because it seeks to take that decision out of the jury's hands.

To convict Ziobrowski—and to avoid any conflict with the First Amendment—the government will need to prove at trial that Ziobrowski's July 2 tweet constituted a "true threat" to injure another person—that is, a "statement[] where the speaker means to communicate a serious expression of an intent to commit an act of unlawful violence to a particular individual or group of individuals." *Virginia v. Black*, 538 U.S. 343, 359 (2003); *see United States v. Nishnianidze*, 342 F.3d 6, 14–15 (1st Cir. 2003) ("To convict under § 875, the government ha[s] to prove that the defendant intended to transmit the interstate communication and that the communication contained a true threat.").[2] Although a true threat cannot consist of political hyperbole, *see Black*, 538 U.S. at 359 (citing *Watts v. United States*, 394 U.S. 705, 708 (1969) (*per curiam*)), genuine threats do not regain constitutional protection just because they touch on or are motivated by political matters, *see, e.g.*, *United States v. Callahan*, 702 F.2d 964, 966 (11th Cir. 1983) ("That the [speech] contains certain political and religious statements does not serve to remove it from the prohibition of the statute [18 U.S.C. § 871, which prohibits threats against the president-elect and vice president-elect].").

---

[2] After the Supreme Court's decision in *Elonis v. United States*, the government must also prove the closely related proposition that "the defendant transmit[ted] a communication for the purpose of issuing a threat, or with knowledge that the communication will be viewed as a threat." 135 S. Ct. 2001, 2012 (2015).

Whether a statement constitutes a true threat depends on a number of factors, including (among others) the wording of the statement, whether the statement appeared to be intended as a joke or satire,[3] whether the apparent threat was conditional,[4] and the reaction of the audience (*e.g.*, laughter versus fear or worry).[5] Because weighing these factors requires findings of fact, "[w]here [ ] statutes employ the word 'threat,' it is generally held that the better course is to decide each case on its facts leaving defendant's intent as a question for the jury." *United States v. Carrier*, 672 F.2d 300, 306 (1st Cir. 1982) (reversing dismissal of indictment for threats to the president and remanding the case for trial); *see, e.g.*, *Clemens*, 738 F.3d at 13 ("Whether a statement constitutes a threat is an issue of fact for the trial jury, involving assessments of both credibility and of context." (internal quotation marks and alterations omitted)); *Stock*, 728 F.3d at 298 ("In the usual case, whether a communication constitutes a threat or a true threat 'is a matter of fact to be decided by the trier of fact.'") (citing cases in agreement from the Second, Fourth, Seventh, Eighth, and Tenth Circuits).

As the evidence at trial will prove, the factors above all support the conclusion that Ziobrowski's July 2 tweet was a true threat. The tweet took the form of a public and explicit solicitation of a murder for hire, one in which the solicitor—Ziobrowski—twice emphasized his seriousness by employing words like *literally* and *seriously*.[6] The threat was not conditional, and

---

[3] *See, e.g.*, *United States v. Lockhart*, 382 F.3d 447, 449, 451–52 (4th Cir. 2004) (rejecting the contention that the statement "If George Bush refuses to see the truth and uphold the Constitution I will personally put a bullet in his head" was political hyperbole).

[4] *See, e.g.*, *Watts*, 394 U.S. at 708 ("Taken in context, and regarding the expressly conditional nature of the statement and the reaction of the listeners, we do not see how it could be interpreted otherwise [than as a true threat].").

[5] *See, e.g.*, *id.*; *see also Fulmer*, 108 F.3d at 1499–1500.

[6] It does not matter that the tweet did not take the grammatical form of a classic threat (*e.g.*, "I will kill you"). "The use of ambiguous language does not preclude a statement from being a threat," *Fulmer*, 108 F.3d at 1492, and the presentation of certain statements and information in combination can amount to a threat even in the absence of statements explicitly detailing what

there was no indication that it was made in jest or as a form of satire. As alleged in the indictment, the members of the law enforcement community targeted by the threat took the threat seriously, quickly disseminating a national bulletin to warn other law enforcement agencies of the potential threat to their safety. *See* Indictment ¶ 9.

At trial, the government will present additional evidence concerning the context in which Ziobrowski posted his tweet, evidence that will be relevant to determining Ziobrowski's intent and how Ziobrowski's tweet was likely to be interpreted. Specifically, the government will introduce evidence that, less than two months before the July 2 tweet, Ziobrowski was alerted to an incident in which the FBI visited the house of a person who tweeted (as it was recounted to Ziobrowski) "I will reward you for every ICE agent you kill." This is evidence that Ziobrowski knew that law enforcement would view his July 2 tweet as a threat. Similarly, the government will introduce evidence that Ziobrowski's tweet came after a spate of reporting regarding

---

harm the maker of the statement intends to inflict on another person. In certain situations, exhortations of other people to commit acts of violence, whether those exhortations are explicit or implicit, can function as threats. *See, e.g.*, *United States v. Turner*, 720 F.3d 411, 414–16, 418–25 (2d Cir. 2013) (upholding convictions under 18 U.S.C. § 115(a)(1)(B) for threats to assault and murder three United States judges where the defendant wrote a blog post in which the defendant argued that three judges deserved be killed because of a decision they issued and followed that with posts publicizing their names and photographs along with maps to their courthouses with arrows indicating the locations of protective barriers). In this district, the prosecution of Patrick Keogan serves as an example. In 2017, Keogan pled guilty to violating 18 U.S.C. § 844(e) (using an instrument of interstate commerce to willfully make a threat to injure and intimidate another individual and to unlawfully damage and destroy a building by means of fire) after he posted an image of a mosque in flames on the Facebook pages of Islamic societies with the superimposed text "BURN YOUR LOCAL MOSQUE." *See generally United States v. Keogan*, No. 16-cr-10244-DPW (D. Mass.); *see also* DOJ Sentencing Press Release (describing facts), *available at* https://www.justice.gov/usao-ma/pr/wilmington-man-sentenced-threatening-mosque-and-illegally-possessing-firearms-and-child. And as the Supreme Court has recognized, a threat need not use words at all. *See Black*, 538 at 360–63 (affirming the state of Virginia's power to criminalize a burning cross as a threat).

increased threats to ICE agents,[7] which, the government will argue, tends to show Ziobrowski understood how his tweet would be interpreted. The government will also introduce statements made by Ziobrowski in a non-custodial, pre-arrest interview in which he admitted that he understood that his tweet could motivate someone to kill an ICE agent.

Ziobrowski will surely contend that the government draws the wrong conclusions from this evidence, but the government could say the same about the evidence Ziobrowski attempts to introduce via his motion to dismiss. To take one example, Ziobrowski highlights his tweet "I'm not pro death but I literally don't care about cops" as a reason his July 2 tweet and others should be "understood as comments on political issues of public concern," not as threats. Mot. at 4. Despite violent language in many of his tweets, Ziobrowski contends, "there is no evidence that Mr. Ziobrowski acted in furtherance of any alleged threats." Mot. at 3.[8] But the government will argue that Ziobrowski's statement that he "literally [does not] care about cops" and other similar statements constitute evidence that Ziobrowski's July 2 tweet was made in earnest, with the intent—or at least the hope—that someone would act on his solicitation and kill an ICE agent.

---

[7] *See, e.g.*, "Homeland Security employees warned of increased threats amid immigration uproar," CBS News, June 24, 2018, *available at* https://www.cbsnews.com/news/homeland-security-memo-today-increased-threats-2018-06-23/ (last visited May 31, 2019); Geneva Sands, "Increasing threats to Homeland Security include burned animal carcass left on staffer's porch," ABC News, June 25, 2018, *available at* https://abcnews.go.com/Politics/increasing-threats-dhs-include-burned-animal-carcass-left/story?id=56131357 (last visited May 31, 2019); Brett Samuels, "DHS warns of 'heightened threat' against employees amid immigration fallout," The Hill, June 25, 2018, *available at* http://thehill.com/homenews/administration/394052-dhs-warns-of-heightened-threat-against-employees (last visited May 31, 2019); Chantal da Silva, "Decapitated Carcass Left at DHS Staffer's Door Amid Heightened Threats," Newsweek, June 26, 2018, *available at* https://www.newsweek.com/decapitated-carcass-left-dhs-staffers-door-amid-heightened-threats-995090 (last visited May 31, 2019).

[8] Even if true, this fact is irrelevant. The government need not prove that the defendant had the intent or ability to carry out a true threat. *See, e.g.*, *Black*, 503 U.S. at 359–60 ("The speaker need not actually intend to carry out the threat."); *see also United States v. Stefanik*, 674 F.3d 71, 75–76 (1st Cir. 2012) (holding, in a case involving a threat statute similar to § 875(c), 18 U.S.C. § 115(a)(1)(B), that "[i]t is not required that [the defendant] intended to, or was even able to, carry out the threat.").

The jury's function is especially critical in a case where context and interpretation play such important roles. As Ziobrowski's own filing emphasizes (albeit from the opposite point of view), the context in which Ziobrowski made his statement matters almost as much as the statement itself. And as just discussed, the government and the defendant disagree about the significance that should be assigned to a number of contextual facts. When that happens, the choice between those interpretations is an issue of fact properly left to the jury, not to the Court. *See Clemens*, 738 F.3d at 13 ("[T]he choice among interpretations [is] an issue of fact properly left to a jury.").

For essentially those reasons, this was the conclusion recently reached by Judge Talwani in a threat case in which the defendant argued that the § 875(c) charge against him should be dismissed because his statements constituted political hyperbole, not true threats. *See generally United States v. Radulovic*, No. 18-cr-10172-IT (D. Mass.), March 15, 2019 Order (Dkt. 33). Judge Talwani needed only a paragraph to reject the proposition:

> Radulovic further contends that his speech was protected by the First Amendment. Specifically, he argues that "his comments can be understood as a form of mimicry and parody." . . . Radulovic may make this argument to the jury but making such a determination is not the court's role at this juncture. "A party may raise by pretrial motion any defense, objection, or request that the court can determine <u>without a trial on the merits</u>." Fed. R. Crim. P. 12(b)(1) (emphasis added). To decide the motion in the Defendant's favor, the court would have to consider evidence outside of the indictment, raised only by Defendant in his motion, and contextualize all of the grand jury's findings in favor of the Defendant. Such an approach usurps the power of the jury and the rights of the government and Defendant to have a trial on the merits. Therefore, the Defendant's <u>Motion to Dismiss</u> [26] is [ ] DENIED . . . .

*Id.* at 5 (citations omitted). The same outcome is called for here.

Once presented with the evidence and arguments at trial, a reasonable jury will be empowered to conclude that Ziobrowski's July 2 tweet constituted a true threat—a serious expression of an intent to commit harm—and that Ziobrowski posted the tweet with an intent to

threaten or with the knowledge that the tweet would be viewed as a threat. The fact that

Ziobrowski's tweet may have been motivated by political concern, or even to obtain a political

objective—say, to induce ICE agents to quit or to stop their work—does not prevent this

conclusion. Weighing the various contextual factors and making the ultimate determination

whether the July 2 tweet constituted a true threat are tasks that cannot be performed without a

trial on the merits. Ziobrowski's motion to dismiss must therefore be denied. *See* Fed. R. Crim.

P. 12(b)(1) (permitting a defendant to raise only those defenses "that the court can determine

without a trial on the merits").

II.    Ziobrowski's Constitutional Arguments Should be Dismissed For Lack of Argumentation
       and Because § 875(c) Does Not Violate the Constitution, Either Facially or as Applied
       <u>Here</u>

       Although Ziobrowski asserts that § 875(c) is unconstitutional, both facially and as

applied, he does not explain why either contention should be accepted. In a three-page passage

that ostensibly relates to overbreadth, for example, Ziobrowski does not so much as give one

example of a statement that would be criminalized by § 875(c) but protected by the First

Amendment. *See* Mot. at 14–17. Aside from a single sentence asserting that "§ 875(c) is

unconstitutionally broad because it has the potential . . . to capture protected political speech in

its reach," this section of his brief is filled with an exposition concerning the general nature,

scope, and importance of this country's protections of the right to free speech. *Id.* at 16.

Ziobrowski's constitutional contentions should therefore be deemed waived for lack of

argumentation. *See United States v. Zannino*, 895 F.2d 1, 17 (1st Cir. 1990) ("[I]ssues adverted

to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are

deemed waived.").

More importantly, both Ziobrowski's constitutional contentions are wrong.[9] Ziobrowski's

contention that § 875(c) is "facially defective because it seeks to criminalize political speech"

(Mot. at 1) is incorrect because, by its terms, § 875(c) seeks only to criminalize interstate threats,

and the Supreme Court has ruled that true threats are not constitutionally protected. *See, e.g.*,

*Black*, 538 U.S. at 359 ("[T]he First Amendment permits a [government] to ban 'true threats.'").

As the Supreme Court has observed, "[a] facial challenge is really just a claim that the law or

policy at issue is unconstitutional in all its applications." *Bucklew v. Precythe*, 139 S. Ct. 1112,

1127 (2019). Because the First Amendment does not protect threats, this cannot be true of

§ 875(c). Congress has the power to criminalize at least some threats—"true threats," as the

Supreme Court has defined the term—therefore § 875(c) has at least some legitimate scope.

For similar reasons, there can be no serious contention that § 875(c) is unconstitutionally

overbroad, as Ziobrowski suggests on page 16 of his motion. Section 875(c) is not broad, but

narrow. It prohibits the interstate transmission of only two kinds of communications: threats to

kidnap another person and threats to injure another person. *See* 18 U.S.C. § 875(c). Through its

decisions, the Supreme Court and the First Circuit have given shape to the meaning of the term

*threat* in this area of the law, just as they have done with all manner of other terms in criminal

statutes (*knowingly*, *willfully*, etc.). The result is that the term *threat* in § 875(c) can include only

those communications that qualify as true threats as defined by the Supreme Court's

jurisprudence.[10] *See Nishnianidze*, 342 F.3d at 14–15 ("To convict under § 875, the government

---

[9] In places, they are muddled as well, *e.g.* "§ 875(C) IS UNCONSTITUTIONALLY OVERBROAD AS APPLIED HERE BECAUSE IT'S [sic] BREADTH CAPTURES POLITICAL SPEECH." Mot.at 14. An overbreadth challenge is a type of facial challenge, which is distinct from an as-applied challenge.

[10] Given the plain meaning of the word *threat*, this is the only reasonable reading of § 875(c), but even if there were another, the canon of constitutional avoidance should lead the Court to construe the word *threat* in § 875(c) in conformity with the Supreme Court's "true threats" case

ha[s] to prove that the . . . communication contained a true threat."). Given that definitional

limitation, it is impossible for § 875(c) to criminalize "a substantial amount of protected

expressive activity," which is what would be required in order to invalidate § 875(c) for

overbreadth. *United States v. Williams*, 553 U.S. 285, 292, 297 (2008) ("According to our First

Amendment overbreadth doctrine, a statute is facially invalid if it prohibits a substantial amount

of protected speech."). Consequently, the statute is not overbroad. *See United States v. Martinez*,

736 F.3d 981, 988–990 (11th Cir. 2013) (*per curiam*) (upholding § 875(c) against an overbreadth

challenge) (vacated and remanded on other grounds by *Martinez v. United States*, 135 S. Ct.

2798 (2015), in light of *Elonis v. United States*, 135 S. Ct. 2001 (2015)).

 That leaves only Ziobrowski's ostensible as-applied challenge, but this challenge proves

to be nothing more than a reformulation of his contention that the July 2 tweet was protected

political speech—which is to say, an assertion that the tweet was not a true threat. *See, e.g.*, Mot.

at 20 ("Mr. Ziobrowski's tweet should be read as protected political speech, not as a threat to

injure another."); *cf. United States v. Sayer*, 748 F.3d 425, 434 (1st Cir. 2014) (characterizing the

defendant's challenge to the jury instructions on true threats in *Clemens*, 738 F.3d 1, as an "as-

applied challenge" to § 875(c)). If the July 2 tweet were not a true threat, it would be

constitutionally protected, but it also would not be criminal under § 875(c). *See United States v.

Whiffen*, 121 F.3d 18, 22 (1st Cir. 1997) ("In any event, a true threat is not protected by the First

Amendment. For this reason, a conviction upon a finding that the statements were true threats

would not violate Whiffen's constitutionally protected right to speech." (citation omitted)). This

is why potential First Amendment concerns of this nature are to be "addressed by the

---

law. *See, e.g.*, *Edward J. DeBartolo Corp. v. Florida Gulf Coast Building & Constr. Trades Council*, 485 U.S. 568, 575 (1988) ("[W]here an otherwise acceptable construction of a statute would raise serious constitutional problems, the Court will construe the statute to avoid such problems unless such construction is plainly contrary to the intent of Congress.").

requirement of proof beyond a reasonable doubt at trial, not by a dismissal at the indictment

stage." *United States v. White*, 610 F.3d 956, 959 (7th Cir. 2010) (*per curiam*); *see Clemens*, 738

F.3d at 13 (stating that the need to interpret § 875(c) "with the commands of the First

Amendment clearly in mind . . . . is not a basis on which to take away from the jury the factual

question of whether or not [the defendant's communications] conveyed true threats").[11]

## Conclusion

The only question raised and properly argued in the defendant's motion—whether, in

context, Ziobrowski's tweet constituted a true threat—is for the jury to decide at trial, not for the

Court in a pretrial motion. Ziobrowski's purported constitutional challenges to § 875(c) are both

waived and meritless. Because the defendant's motion to dismiss does not raise a "defense,

objection, or request that the court can determine without a trial on the merits," the motion

should be denied. Fed. R. Crim. P. 12(b)(1).

Respectfully submitted,

ANDREW E. LELLING
United States Attorney

By:   */s/ Brian A. Pérez-Daple*
B. Stephanie Siegmann
Brian A. Pérez-Daple
Assistant U.S. Attorneys

---

[11] The central dispute in *Clemens* concerned the jury instruction about the intent necessary to be guilty under § 875(c). In light of *Elonis*, that instruction, which was affirmed in *Clemens*, was in error, as both the parties and the district court later recognized. *See United States v. Clemens*, 278 F. Supp. 3d 505, 506, 507 (D. Mass. 2017). Nothing about *Elonis* or the later decision of the district court, however, upset the First Circuit's decision that the motion to dismiss in *Clemens* was properly denied because the motion presented an issue of fact for the trial jury, not for the court. *See Clemens*, 738 F.3d at 12–13.

**Certificate of Service**

I hereby certify that this document, filed through the ECF system, will be sent electronically to the registered participants as identified on the Notice of Electronic Filing.

Dated: May 31, 2019                              /s/ Brian A. Pérez-Daple
                                                 Assistant United States Attorney