UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA | ) ) ) | |
| v. | ) ) | Criminal No: 18-cr-10250-DJC |
| BRANDON ZIOBROWSKI | ) ) ) | |

**REPLY TO GOVERNMENT'S OPPOSITION TO
DEFENDANT'S MOTION TO DISMISS**

Now comes the Defendant, Brandon Ziobrowski, in the above-captioned matter and respectfully replies to the Government's Opposition to the Defendant's Motion to Dismiss.

As grounds therefore, the Defendant states as follows:

**ARGUMENT**

The Government argues that the Court cannot dismiss this indictment because whether or not Mr. Ziobrowski made a "true threat" is a question of fact for the jury. See Government's Opposition, p. 1. However, this argument is misplaced; Mr. Ziobrowski does not argue whether or not his tweet constituted a true threat, rather, he argues that § 875(c) is unconstitutional. § 875(c) is unconstitutional given the special treatment traditionally accorded to political speech. Therefore, the issue before the court is not to be resolved based on a factual determination; but instead, it is a purely legal question of whether or not political speech made within the context of the current political environment can be criminalized.

1

Contrary to the Government's contention that Mr. Ziobrowski did not present an argument as to his constitutional contentions, Mr. Ziobrowski presented extensive examples of speech that could be captured within the broad breadth of § 875(c), but nonetheless were not. Some of the statements were made by none other than the President of the United States. Some of the enumerated statements could be considered to constitute a true threat under the statute as they were directed towards specific individuals. The government incorrectly claims that Mr. Ziobrowski muddled his constitutional arguments because he supposedly mixed his facial challenge with his as-applied challenge. Here, the government misses the distinct treatment accorded to political speech. Specifically, challenges to the statute that prohibit strict political speech can be made facially, or as applied.

"[T]he overbreadth doctrine permits the facial invalidation of laws that inhibit the exercise of First Amendment rights if the impermissible applications of the law are substantial when 'judged in relation to the statute's plainly legitimate sweep.'" Chicago v. Morales, 527 U.S. 41, 52 (1999) (*quoting* Broadrick v. Oklahoma, 413 U.S. 601, 615 (1973)). Thus, "[i]n a facial challenge to the overbreadth . . . of a law, a court's first task is to determine whether the enactment reaches a substantial amount of constitutionally protected conduct. If it does not, then the overbreadth challenge must fail." Village of Hoffman Estates v. Flipside, Hoffman Estates, Inc., 455 U.S. 489, 494 (1982); accord Whiting v. Town of Westerly, 942 F.2d 18, 21 (1st Cir. 1991). The Supreme Court has warned that "[t]he overbreadth doctrine is 'strong medicine' that is used 'sparingly and only as a last resort.'" N.Y. State Club Ass'n v. City of New York, 487 U.S. 1, 14 (1988) (*quoting* Broadrick, 413 U.S. at 613).

In cases that have entertained claims of facial overbreadth involving statutes which seek to regulate 'only spoken words,' it has been the judgment of the Supreme Court that "the

2

possible harm to society in permitting some unprotected speech to go unpunished is outweighed by the possibility that protected speech of others may be muted and perceived grievances left to fester because of the possible inhibitory effects of overly broad statutes." Gooding v. Wilson, 405 U.S. 518, 520 (1972). See Cohen v. California, 403 U.S. 15 (1971); Street v. New York, 394 U.S. 576 (1969); Brandenburg v. Ohio, 395 U.S. 444 (1969); Chaplinsky v. New Hampshire, 315 U.S. 568 (1942). Facial overbreadth claims have also been entertained where statutes, by their terms, purport to regulate the time, place, and manner of expressive or communicative conduct, see Grayned v. City of Rockford, 408 U.S., at 114-121; Cameron v. Johnson, 390 U.S., at 617-619; Zwickler v. Koota, 389 U.S. 241, 249-250 (1967); Thornhill v. Alabama, 310 U.S. 88 (1940), and where such conduct has required official approval under laws that delegated standardless discretionary power to local functionaries, resulting in virtually unreviewable prior restraints on First Amendment rights. See Shuttlesworth v. Birmingham, 394 U.S. 147 (1969); Cox v. Louisiana, 379 U.S. 536, 553-558 (1965); Kunz v. New York, 340 U.S. 290 (1951); Lovell v. Griffin, 303 U.S. 444 (1938). Here, the harm to society presented by refusing to protect Mr. Ziobrowski's tweet is largely outweighed by the "possibility that protected speech of others may be muted and perceived grievances left to fester" because to silence a critic of the current administration only seeks to: (1) validate and advance the current administration's ideas and speech; and (2) silence the critics of President Trump and his administration.

To succeed in a typical facial attack, Mr. Ziobrowski would have to establish "that no set of circumstances exists under which [§ 875(c)] would be valid," United States v. Salerno, 481 U.S. 739, 745 (1987), or that the statute lacks any "plainly legitimate sweep," Washington v. Glucksberg, 521 U.S. 702, 740, n. 7 (1997) (Stevens, J., concurring in judgments) (internal quotation marks omitted). In the First Amendment context, however, this Court recognizes "a

second type of facial challenge," whereby a law may be invalidated as overbroad if "a substantial number of its applications are unconstitutional, judged in relation to the statute's plainly legitimate sweep." Washington State Grange v. Washington State Republican Party, 552 U.S. 442, 449, n. 6 (2008) (internal quotation marks omitted).

Courts have ruled that, when a criminal statute first requires the government of proving a person communicated a "true threat," it limits the application of the statute to exclude "political hyperbole" as well as some "vehement, caustic, and sometimes unpleasantly sharp attacks on government and public officials." Watts v. United States, 394 U.S. 705, 707–08 (1969) (quotations omitted). In circumstances where the statute is limited in such a way, it is not overbroad. Id.; see also Broadrick v. Oklahoma, 413 U.S. 601, 613 (1973) ("Facial overbreadth has not been invoked when a limiting construction has been or could be placed on the challenged statute") (citation omitted). Here, Mr. Ziobrowski has not communicated a "true threat" within the meaning of the statute because there is no standard definition of "true threat" for which his conduct is to be considered. As such, § 875(c) is unconstitutionally overbroad and therefore facially defective, because it seeks to arbitrarily prohibit "true threats" without defining "true threats." Though the Government, in its Opposition, claimed that the Supreme Court and the First Circuit "have given shape to the meaning of the term *threat* in this area of the law," the Government failed to provide any definition of what communication constitutes a threat, as defined by either the Supreme Court or the First Circuit. See Government's Opposition, p. 12 (emphasis in original). Rather, the Government insists that the term threat "can include only those communications that qualify as true threats as defined by the Supreme Court's jurisprudence." See id.

The "bedrock principle underlying the First Amendment is that the government may not prohibit the expression of an idea simply because society finds the idea itself offensive or disagreeable." Texas v. Johnson, 491 U.S. 397, 414 (1989). Accordingly, the Constitution "demands that content-based restrictions on speech be presumed invalid, and that the government bear the burden of showing their constitutionality." Ashcroft v. ACLU, 542 U.S. 656, 660 (2004) (citation omitted). "From 1791 to the present, however, the First Amendment has permitted restrictions upon the content of speech in a few limited areas,"--"well-defined and narrowly limited classes of speech, the prevention and punishment of which" have, as a matter of "histor[y] and traditio[n]," been deemed constitutionally permissible. United States v. Stevens, 559 U.S. 460, 468 (2010) (internal quotation marks omitted). For example, the government may punish speech or conduct that is obscene, defamation, and incitement. Id. (collecting authorities). The Supreme Court has held that a "category of speech" cannot be "exempted from the First Amendment's protection without any long-settled tradition of subjecting that speech to regulation." Stevens, 559 U.S. at 469; Alvarez, 132 S. Ct. at 2544 (opinion of Kennedy, J.) ("content-based restrictions" have been permitted "only when confined to the few historic and traditional categories [of expression] long familiar to the bar") (internal quotation marks omitted).

An expression of disdain for the work that certain government officials perform in their official capacities cannot be considered a true threat under the circumstances because to do so would risk encapsulating the language of all political commentators and critics. Under the Free Speech Clause, a government, "has no power to restrict expression because of its message, its ideas, its subject matter, or its content." Police Dept. of Chicago v. Mosley, 408 U.S. 92, 95 (1972). "Content-based laws—those that target speech based on its communicative content—are

presumptively unconstitutional and may be justified only if the government proves that they are narrowly tailored to serve compelling state interests." R.A.V. v. St. Paul, 505 U.S. 377, 395 (1992); Simon & Schuster, Inc. v. Members of N.Y. State Crime Victims Bd., 502 U.S. 105, 115 (1991). Government regulation of speech is content based if a law applies to particular speech because of the topic discussed or the idea or message expressed. See e.g., Sorrell v. IMS Health, Inc., 131 S. Ct. 2653, 2663–2664 (2011); Carey v. Brown, 447 U.S. 455, 462 (1980); Mosley, *supra*, at 95. Accordingly, the Government cannot seek to target or prohibit speech with which it does not agree.

The Government contends in its Opposition both that Mr. Ziobrowski devoted a significant portion of its Motion to factual assertions and that Mr. Ziobrowski failed to identify any statements that would be encapsulated in the reach of § 875(c). However, Mr. Ziobrowski is not required to prove that "his own conduct could not be regulated by a statute drawn with the requisite narrow specificity." Dombrowski v. Pfister, 380 U.S., at 486. Here, in order to avoid a constitutional challenge, the statute has to be drawn more narrowly.

It has long been recognized that the First Amendment needs breathing space and that statutes attempting to restrict or burden the exercise of First Amendment rights must be narrowly drawn and represent a considered legislative judgment that a particular mode of expression has to give way to other compelling needs of society. Herndon v. Lowry, 301 U.S. 242, 258 (1937); Shelton v. Tucker, 364 U.S. 479, 488 (1960); Grayned v. City of Rockford, 408 U.S., at 116-117. "As a corollary, the Court has altered its traditional rules of standing to permit—in the First Amendment area—'attacks on overly broad statutes with no requirement that the person making the attack demonstrate that his own conduct could not be regulated by a statute drawn with the

requisite narrow specificity.'" <u>Dombrowski v. Pfister</u>, 380 U.S., at 486. The motion to dismiss provided numerous examples of speech, that could be criminalized by § 875(c).

Lastly, in <u>Watts v. United States</u>, the Supreme Court emphasized the necessity of distinguishing between mere hyperbole and true threats in the context of the current political environment. 394 U.S. 705, 707–08 (1969). Robert Watts was convicted after stating "If they ever make me carry a rifle the first man I want to get in my sights is L.B.J" a Washington D.C. anti-war protest. <u>Id.</u> at 707. The Court, in reversing Watts' conviction for threatening the President, focused on the expressly conditional nature of Watts' language, highlighting that public debates can be "vehement" and "caustic." <u>Id.</u> The Court reasoned: "we must interpret the language Congress chose 'against the background of a profound national commitment to the principle that debate on public issues should be uninhibited, robust, and wideopen, and that it may well include vehement, caustic, and sometimes unpleasantly sharp attacks on government and public officials.'" <u>Id.</u> at 708 *quoting* <u>New York Times Co. v. Sullivan</u>, 376 U.S. 254, 270 (1964). Here also, Mr. Ziobrowski had tweeted a mere hyperbolic statement in light of today's political environment. Rather than speaking at an anti-war protest to other protesters, Mr. Ziobrowski chose to make his comments online, as do many in today's times. Mr. Ziobrowski did not gather members of the public to join together in a protest against the current administration, nor did he need to—Twitter serves that function for him. As the Court found in <u>Watts</u>, "[t]he language of the political arena . . . is often vituperative, abusive, and inexact" but it cannot be interpreted as anything more than a blunt criticism—"a kind of very crude offensive method of stating a political opposition." <u>Id.</u> In sum, the statute is unconstitutionally overbroad and is unconstitutional as applied in this case.

CONCLUSION

Accordingly, the Defendant, by and through his counsel, moves this Honorable Court to dismiss the charge against him.

Respectfully submitted,

*/s/ Derege B. Demissie*

_____
Derege B. Demissie
DEMISSIE & CHURCH
929 Massachusetts Avenue, Suite 101
Cambridge, MA 02139
(617) 354-3944
BBO# 637544

**CERTIFICATE OF SERVICE**

I hereby certify that this document, filed through the ECF system, will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants on July 16, 2019.

/s/ *Derege B. Demissie*
DEREGE B. DEMISSIE