UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA | ) ) ) | |
| v. | ) ) | Crim. No. 18-cr-10250-DJC |
| BRANDON JAMES ZIOBROWSKI, | ) ) ) | |
| Defendant. | ) ) | |

**GOVERNMENT'S MOTION *IN LIMINE* TO EXCLUDE
EVIDENCE OF STATEMENTS MADE BY OTHERS**

The government moves *in limine* to exclude any statement made by someone other than the defendant offered for the purpose of showing context unless (1) there is evidence that the defendant saw or otherwise knew about the statement, and (2) the statement is relevant to determining a fact of consequence at the trial. Ziobrowski is charged with making a threat via a tweet on July 2, 2018. At trial, there will be no disagreement either that Ziobrowski authored the tweet or posted it to this Twitter account. The question will be what he intended when he posted the tweet. Some relevant context will be important to this determination, but that context is only relevant if Ziobrowski was aware of it. Other tweets, internet postings, oral statements, and written communications could not have affected Ziobrowski's intent if he did not observe them before he posted the July 2 tweet. Furthermore, regardless of whether Ziobrowski was aware of them, introducing arguably threatening language, political commentary, or other similar statements made by other people — particularly statements of the sort described in the Defendant's motion to dismiss (Dkt. 43 at 6-12 and 18-20) — risks confusing the jury and would cause unnecessary delay in what should be a very short trial. The government, therefore, moves to exclude any such statements under Fed. R. Evid. 401, 402 and 403.

**Background**

As the government wrote in its opposition to the motion to dismiss, the indictment against Ziobrowski contains just one count, which alleges that Ziobrowski violated 18 U.S.C. § 875(c) by knowingly transmitting in interstate and foreign commerce a communication that contained a threat to injure another person, and that he did so "intending that his message communicate a threat and knowing that it would be interpreted as a threat." Indictment (Dkt. 3) ¶ 12. The charge stems from a message Ziobrowski posted on Twitter on July 2, 2018, in which he stated:

> I am broke but I will scrounge and literally give $500 to anyone who kills an ice agent. @me seriously who else can pledge get in on this let's make this work

*Id.* ¶ 6. The indictment further alleges that this tweet was "designed to encourage violence and the murder of law enforcement agents." *Id.* ¶ 8.

In addition to the allegations concerning Ziobrowski's conduct and his intent, the indictment also contains allegations about his knowledge and the environment in which Ziobrowski posted the July 2 tweet. Specifically, the indictment alleges that, "[w]hen ZIOBROWSKI posted his July 2, 2018 tweet, he knew that [ ] people like himself were calling for ICE agents to be killed on social media platforms." *Id.* The indictment describes how Ziobrowski's posts and messages became more violent and anti-law enforcement in the months leading up to July 2, *id.* ¶¶ 3–5, and describes the response to the July 2 tweet of the Department of Homeland Security, which, "[b]ased upon the seriousness and specificity of the threat," issued a nationwide alert to federal, state, and local law enforcement agencies, including ICE field offices, *id.* ¶ 9. Finally, the indictment recounts how Twitter suspended Ziobrowski's Twitter account after the FBI's Joint Terrorism Task Force requested that Twitter remove the July 2 tweet "because it posed a threat to the public safety of ICE agents around the country." *Id.* ¶ 10.

To convict the defendant, the government will need to prove:

(1) The defendant transmitted a communication in interstate or foreign commerce;[1]
(2) He intended to transmit this communication;[2]
(3) The communication contained a true threat[3] to kidnap or injure a person;[4] and
(4) The defendant intended that the communication be interpreted as a threat to injure a person, or had knowledge that it would be viewed as a threat.[5]

To do this, the government will present evidence establishing that it was Ziobrowski who posted the July 2 tweet (he admitted as much in a non-custodial, voluntary interview prior to his arrest), along with (1) evidence of Ziobrowski's attitude toward law enforcement generally and immigrations officers in particular (relevant to his intent when posting the July 2 tweet); (2) evidence of then-current events concerning immigration and the U.S. Department of Homeland Security's Immigration and Customs Enforcement ("ICE") of which the defendant was aware (also relevant to intent because it explains why the defendant was angry enough to threaten ICE agents, among other reasons); and (3) evidence of the reaction of the law enforcement community to Ziobrowski's tweet (relevant to determining whether the July 2 tweet constituted a true threat, *see, e.g.*, *United States v. Fulmer*, 108 F.3d 1486, 1491, 1499–1500 (1st Cir. 1997)).

The government expects that, as foreshadowed by the defendant's motions to dismiss filings, the defense will offer evidence that Ziobrowski was not the only one who criticized ICE, perhaps even in a similar fashion, *see, e.g.,* Motion to Dismiss (Dkt. 43) at 4–6, 17–18 (writing

---

[1] 18 U.S.C. § 875(c).

[2] "To convict under § 875, the government had to prove that the defendant intended to transmit the interstate communication . . . ." *United States v. Nishnianidze,* 342 F.3d 6, 14–15 (1st Cir. 2003) (referring to convictions under § 875(b) and (c)).

[3] "To convict under § 875, the government had to prove that the defendant intended to transmit the interstate communication and that the communication contained a true threat." *Id.* at 14–15.

[4] 18 U.S.C. § 875(c).

[5] *Elonis v. United States*, 135 S. Ct. 2001, 2012 (2015); *United States v. Radulovic*, No. 18-cr-10172-IT (D. Mass.), March 15, 2019 Order (Dkt. 33) at 4.

"In fact, Mr. Ziobrowski is not the only one critical of the Immigrations and Customs Enforcement Agency," and then listing examples), and that other people sometimes use Twitter or other forms of media to make antagonistic or threatening comments, *see, e.g.*, *id.* at 6–12, 18–20 ("Mr. Ziobrowski's comments are also to be considered in light of President Trump's and the GOP's hateful comments"). This motion *in limine* seeks to limit the introduction of statements to those Ziobrowski himself made, adopted or observed, *and* that are relevant to the issues to be decided at trial. In the absence of evidence that Ziobrowski knew about them, there is no reason to think a particular tweet or other statement affected his intent when posting the July 2 tweet, making them irrelevant to the trial. And even if Ziobrowski was aware them, some statements— "hateful" tweets or other statements made by President Trump, for example—are not admissible because they are not relevant and, in any event, are substantially more prejudicial than probative.

## Argument

I.   <u>Statements made by others are irrelevant unless Ziobrowski knew about them.</u>

Evidence is relevant if "it has any tendency to make a fact more or less probable than it would be without the evidence" and the fact is "of consequence in determining the action." Fed. R. Evid. 401. In this prosecution, certain tweets and other statements made by Ziobrowski are relevant to his intent when sending the July 2 tweet. For instance, the government may seek to introduce several tweets made by Ziobrowski in the months preceding his July 2 tweet in order to demonstrate that Ziobrowski did not value the lives or safety of law enforcement officers, including ICE agents. These tweets are relevant because they make it more likely that Ziobrowski intended that his July 2 tweet be interpreted as a threat. The defense, on the other hand, may seek to use certain statements posted on the internet by Ziobrowski as evidence that he was a political commentator.

Statements by other people offer no such insight if Ziobrowski did not observe the statements or hear about them. At trial, the government must prove that the defendant posted the July 2 tweet for the purpose of issuing a threat or with knowledge that the statement in question would be viewed as a threat. *See Elonis*, 135 S. Ct. at 2012; *Radulovic*, March 15, 2019 Order at 4. The defense may argue that the tweet was intended as political commentary, not as a threat. However, statements made by people other than the defendant of which the defendant was unaware on or before July 2, 2018 could not possibly help the jury resolve this dispute, making them irrelevant and inadmissible. *See* Fed. R. Evid. 402 ("Irrelevant evidence is not admissible."). The defendant must be precluded, therefore, from referring to the statements of others absent evidence that the defendant observed or was aware of the statement prior to July 2nd.

By way of example, the defendant's motion to dismiss filings make reference to numerous statements of others, including President Trump, arguing that it was "within the context of the heated political debate and controversy, the widespread use of violent and offensive language" that Ziobrowski posted the July 2 tweet. *See* Motion to Dismiss (Dkt. 43) at 4-12. As he did in his motion to dismiss, *see id.* at 20, the defendant may argue at trial that these statements provide the relevant context for his July 2 tweet. Absent some evidence that the defendant was actually aware of these statements, however, it is unclear how they could possibly satisfy Fed. R. Evid. 401's relevance test. In other words, in order for the statements of others to have had any bearing on the defendant's state of mind on July 2, 2018, he had to have known about them beforehand. *See United States v. Zayyad*, 741 F.3d 452, 460 (4th Cir. 2014) ("Unless there is a connection between the external facts and the defendant's state of mind, the evidence of the external facts is not relevant" to the defendant's state of mind.) (internal quotations

omitted). Absent such evidence, the only conceivable reason the defendant would seek to introduce such statements is to try and mitigate his own conduct by impermissibly arguing that it is, in his view, commonplace to make menacing statements on the internet. *See* p.7, *infra*. The defendant should be precluded from making this argument, or putting statements of others of which he was not aware before the jury.

2. <u>Evidence concerning statements by others would fail the Rule 403 balancing test.</u>

Even if statements by others were otherwise admissible and had any probative value, that value would be far outweighed by the risk of unfair prejudice, jury confusion and wasting time, making them inadmissible under Fed. R. Evid. 403. Rule 403 provides that even relevant evidence may be excluded "if its probative value is substantially outweighed by a danger of unfair prejudice, confusing the issues, misleading the jury, undue delay, [or] wasting time. . . ." Fed. R. Evid. 403. In this particular case, the introduction of statements by others—whether statements by media commentators criticizing ICE or statements by politicians that are threatening in tone—risk turning the trial into a referendum on current immigration policies and the speech of other people in a bid for jury nullification. That sort of evidence should be excluded so that the juror's focus remains where it should be: on Ziobrowski's tweet.

It is no answer to say that every public statement concerning immigration or law enforcement reflects the context in which Ziobrowski was speaking on July 2, 2018, or that other speakers have so coarsened public discourse that Ziobrowski's tweet could not reasonably be understood as a true threat. *Cf.* Motion to Dismiss (Dkt. 43) at 20 ("In light of the current political climate in which immigration is a highly discussed and debated topic that permeates everyday life and media reports almost daily, Mr. Ziobrowski's tweet should be read as protected political speech, not a threat to injure another."). This is not a case in which the alleged threat

was made in some obscure environment or setting, such that the jury might require evidence about the normal manner of discourse within that environment in order to evaluate whether the communication in question constituted a threat. Ziobrowski's tweet was part of a public discourse about which the jurors, as members of American society, require no instruction or evidence. *Cf. United States v. Pires*, 642 F.3d 1, 12 (1st Cir. 2011) (excluding expert testimony under Fed. R. Evid. 702 because it concerned areas that jurors "by dint of common experience" were already competent to judge without assistance and therefore "presented a special risk of jury confusion"). To pick and choose among selected statements from that discourse to present to the jury as "context" risks confusing the jury about whose statements they are being asked to judge.

Although it appears Ziobrowski intends to defend himself in this way at trial, it should not be permitted. In his motion to dismiss, Ziobrowski was nearly explicit in arguing that his July 2 tweet could not have been criminal because President Trump made supposedly comparable statements and was not prosecuted.[6] *See* Motion to Dismiss at 1–2 ("In Mr. Ziobrowski's case, he was indicted with making a hyperbolic statement in a political environment where the president of the United States and his supporters repeatedly use similar language to make a political point."). This tack invites the jury to weigh the defendant's conduct against another person's—in this instance, the President's—and to acquit if the jury finds the defendant's conduct equally or less blameworthy. This method of persuasion would be utterly confusing to the jury, and it amounts to nothing more than an improper attempt to seek jury nullification. *See United States v. Bunchan*, 626 F.3d 29, 34 (1st Cir. 2010) ("Neither the court

---

[6] The government does not agree that statements of others identified by the defendant in his motion to dismiss are in any way comparable to the statement made by the defendant on July 2, 2018. The defendant's statement on July 2 constitutes a true threat, while the statements of others that he cites do not.

nor counsel should encourage jurors to exercise their power to nullify."); *United States v. Sepulveda*, 15 F.3d 1161, 1190 (1st Cir. 1993) ("The applicable rule is that, although jurors possess the raw power to set an accused free for any reason or for no reason, their duty is to apply the law as given to them by the court."). To ensure that the jury adheres to its task of assessing whether the *defendant's* actions suffice to meet the elements of the charged offense, the Court should exclude the evidence from which Ziobrowski would make the inappropriate argument. That includes any statement by someone other than the defendant—threats, political commentary, or other similar statements—that bears no direct and substantial relation to his state of mind, or some other issue that will be relevant during the trial.

**Conclusion**

The trial should concern what Ziobrowski intended when he posted the July 2 tweet, not what others have said in criticism or support of immigrants or ICE or on any other topic. Information Ziobrowski was exposed to and was reacting against may well cast light on his intent on July 2, 2018; statements of which he was ignorant cannot. Pursuant to Fed. R. Evid. 402 and 403, therefore, the government asks the Court to exclude any statements by someone other than the defendant unless the defendant knew of the statement, and the statement is relevant to determining a fact of consequence at the trial.

       Respectfully submitted,

       ANDREW E. LELLING
       United States Attorney

By:   */s/ Jason A. Casey*
       B. Stephanie Siegmann
       Jason A. Casey
       Assistant U.S. Attorneys

**Certificate of Service**

I hereby certify that this document, filed through the ECF system, will be sent electronically to the registered participants as identified on the Notice of Electronic Filing.

/s/ Jason A. Casey
Assistant U.S. Attorney

**Local Rule 7.1 Certification**

I certify that I have attempted to confer with opposing counsel in a good faith attempt to resolve or narrow the issues presented in this motion. As of the filing of this motion, however, I was unable to obtain opposing counsel's position regarding this motion.

/s/ Jason A. Casey
Assistant U.S. Attorney